**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Martin N. Jensen, SBN 232231
Katlyn L. Gregg, SBN 306078
350 University Avenue, Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Plaintiff
NEXT WINE, LLC

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEXT WINE, LLC, a Colorado limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BOGLE VINEYARDS, INC., a California corporation,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT FEDERAL LANHAM ACT (15 U.S.C. § 1051) PURSUANT TO DECLARATORY JUDGMENT ACT (28 U.S.C. § 2201)** |

The Plaintiff, Next Wine, LLC (hereinafter "Next Wine"), by and through its attorneys, brings the following complaint for declaratory relief against the Defendant, Bogle Vineyards, Inc. (hereinafter "Bogle"), and alleges as follows:

**JURISDICTION AND VENUE**

1.  Jurisdiction is proper in this court because this litigation arises under federal law, namely, 17 U.S.C. § 1051 et. seq. (Lanham Act). The Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (trademarks), and 28 U.S.C. § 2201 (Declaratory Judgment Act) because an actual controversy exists between the parties.

2.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because, among other things, Bogle resides in this District and the State of California. In addition, a substantial

part of the events giving rise to the claims forming the basis for the subject of the action took place in this District.

3. The Court has personal jurisdiction over Bogle because Bogle conducts business in the State of California and within this District.

## PARTIES

4. Next Wine is a Colorado limited liability company with its principle place of business in Tucson, Arizona and is a registered foreign limited liability company in California. Next Wine is engaged in the business of producing and selling wine.

5. Bogle is a California corporation with its principle place of business in Clarksburg, California. Bogle is engaged in the business of producing and selling wine.

## FACTS

### I. Next Wine and the MY ESSENTIAL Marks

6. In May 2012 Next Wine was organized to produce and market wines using the mark "My Essential".

7. On June 19, 2012, Next Wine submitted its 1(b) intent to use application to register the trademark MY ESSENTIAL RED with the United States Patent and Trademark Office ("USPTO"). Next Wine began using MY ESSENTIAL RED in commerce on January 10, 2013. MY ESSENTIAL RED was registered on the USPTO's principal register on April 23, 2013.

8. On November 7, 2012, Next Wine submitted its 1(b) intent to use application to register the trademark MY ESSENTIAL ROSÉ with the USPTO. Next Wine began using MY ESSENTIAL ROSÉ in commerce on February 27, 2013. MY ESSENTIAL ROSÉ was registered on the USPTO's principal register on June 17, 2014.

9. On November 7, 2012, Next Wine submitted its 1(b) intent to use application to register the trademark MY ESSENTIAL with the USPTO. MY ESSENTIAL was registered on the USPTO's principal register on March 18, 2014.

10. On May 27, 2014 Next Wine submitted its 1(b) intent to use application to register the trademark MY ESSENTIAL CABERNET with the USPTO. Next Wine began using MY ESSENTIAL CABERNET in commerce on October 28, 2014. MY ESSENTIAL CABERNET

was registered on the USPTO's principal register on April 7, 2015.

11. Next Wine has also submitted 1(b) intent to use applications to register the trademarks MY ESSENTIAL WHITE, MY ESSENTIAL PINOT NOIR and MY ESSENTIAL SAUVINGNON BLANC, each of which are currently pending registration. All of Next Wine's MY ESSENTIAL formative marks shall be referred to herein as the "MY ESSENTIAL Marks."

**II.    Bogle and the ESSENTIAL RED Mark**

12. Upon information and belief, on or about May 29, 2012, Bogle claims to have released a wine under their Bogle Vineyards house mark called "Bogle Vineyards Essential Red" wine.

13. Upon information and belief, on or about August 1, 2013 Bogle applied to register ESSENTIAL RED with the USPTO. Bogle's actual mark is BOGLE VINEYARDS ESSENTIAL RED.

14. On or about November 12, 2013, the USPTO examining attorney assigned to review Bogle's application for ESSENTIAL RED issued an initial office action refusing registration of ESSENTIAL RED because of a likelihood of confusion with Next Wine's MY ESSENTIAL RED registered trademark and with several other pending registrations including MY ESSENTIAL WHITE, MY ESSENTIAL ROSÉ and MY ESSENTIAL, all of which were pending applications submitted to the USPTO by Next Wine.

15. On or about May 12, 2014, Bogle responded to the November 12, 2013 office action by vigorously arguing that there would be no likelihood of confusion between its applied-for ESSENTIAL RED mark and Next Wine's MY ESSENTIAL RED registered trademark. Bogle asserted in May 2014 to the USPTO that "Given the narrow scope of protection appropriate for the cited marks, and the distinctions in commercial impression between Applicant's Mark and the Registered Mark, likelihood of confusion is not likely."

16. On May 24, 2014, the USPTO issued a suspension notice pending the likely registration of Next Wine's other trademarks.

17. On August 10, 2016, the USPTO examining attorney issued a second office action refusing registration of ESSENTIAL RED based upon a likelihood of confusion with Next Wine's

registered trademarks MY ESSENTIAL RED, MY ESSENTIAL ROSÉ and MY ESSENTIAL.

### III. The Controversy Develops

18. Upon information and belief, sometime in May 2014, counsel for Bogle may have contacted counsel for Next Wine to discuss Next Wine's MY ESSENTIAL Marks and Bogle's attempt to secure the ESSENTIAL RED Mark. Bogle initially expressed an interest in exploring and negotiating a so-called "coexistence agreement." Bogle apparently followed up with Next Wine's counsel on this communication in October of 2014.

19. Bogle next contacted Next Wine's counsel on June 22, 2016, nearly two years later, during which period Next Wine's MY ESSENTIAL business grew substantially. Bogle's attorney stated that "Bogle has priority and a later-filed application… Bogle is willing to coexist with Ne[xt] Wines as long as the labels remain dissimilar."

20. Representatives from Bogle and Next Wine exchanged a series of e-mails over the following months in an attempt to negotiate a coexistence agreement.

21. On October 21, 2016, Bogle sent an e-mail to Next Wine asking Next Wine to sign a proposed coexistence agreement. Bogle told Next Wine they had until November 9, 2016 to sign the proposed coexistence agreement, or Bogle would file an already drafted petition to cancel Next Wine's registered trademarks on the basis that the MY ESSENTIAL RED, MY ESSENTIAL ROSÉ and MY ESSENTIAL marks were "causing damage and injury to Bogle because these marks so resembled Bogle's mark that they were likely to, when used on or in connection with wines and spirits, cause confusion, or to cause mistake, or to deceive as to source, sponsorship and/or origin of the wines and spirits."

22. Next Wine did not feel comfortable signing the coexistence agreement proposed by Bogle because, among other reasons, it required Next Wine to submit all new MY ESSENTIAL label designs developed by Next Wine for Bogle's approval. Next Wine felt that Bogle's approval rights, as proposed, would grossly limit Next Wine's ability to freely develop and expand its already growing brand. Negotiations towards a mutually agreed upon coexistence agreement continued between Bogle and Next Wine over the following months.

23. On February 7, 2017, however, counsel for Bogle e-mailed counsel for Next Wine and simply stated: "Bogle found this 'my Essential' label on Thursday February 2; and filed the Petition for Cancellation the next day. Consider the offer for coexistence withdrawn."

24. Next Wine was surprised to find that the picture of the label referred to by Bogle's attorney, and which led Bogle to file its petition and withdraw its offer to coexist, was a picture of a bottle of Next Wine's 2013 MY ESSENTIAL CABERNET, which had been used in commerce since October 2014, which bore a label substantially the same as Next Wine had been using since its original 2010 My Essential Red appeared in January 2013, and which was consistent with the specimens Next Wine had filed with the USPTO in support of its MY ESSENTIAL marks.

25. Bogle was apparently so angered by the sight of Next Wine's label that Bogle immediately filed the petition to cancel.

26. On February 3, 2017, Bogle filed a petition to cancel Next Wine's registered trademarks for MY ESSENTIAL RED, MY ESSENTIAL ROSÉ and MY ESSENTIAL with the Trademark Trial and Appeal Board ("TTAB") (hereinafter the "Petition to Cancel").

27. The grounds cited by Bogle in its Petition to Cancel are priority and likelihood of confusion.

28. After filing the Petition to Cancel, Bogle continued to express its frustration with the design of Next Wine's MY ESSENTIAL Marks wine labels – although these labels were consistent with the specimens Next Wine had originally submitted to the USPTO in its various filings – and requested Next Wine to change its label design and use of its MY ESSENTIAL Mark on the label.

### IV. Bogle's Demand that Next Wine Abandon its Marks and Cease Production of Wines Using the MY ESSENTIAL Marks

29. On March 10, 2017, an e-mail from Bogle expressed that although they were still willing to reach an agreement, the terms to "coexist" would become even more onerous because "Next Wine was made aware of Bogle's prior rights in ESSENTIAL RED in 2014, yet since then continued to use and file trademark applications for various "MY ESSENTIAL" marks."

30. These new, harsher terms included a request that Next Wine "abandon any trademark application containing the word "ESSENTIAL" filed after May 14, 2014, the date of

{01695576.DOCX}   5

Bogle's first warning letter, and for other than the specific three existing MY ESSENTIAL formative registrations, cease producing and selling any wines bearing "MY ESSENTIAL" marks when existing inventories are exhausted." Bogle also included their sales numbers "prior to the earliest date that has been asserted for Next Wine's marks", and further threatened that "Demonstrating likelihood of confusion will be based, at a minimum, upon the USPTO's citation of Next Wine's "MY ESSENTIAL" formative marks against Bogle's application for ESSENTIAL RED as likely to cause confusion."

31. At this point, Next Wine grew increasingly concerned, not only at the thought of having to commit substantial time and expenses towards rebranding but also at the prospect, based upon Bogle's threats, that Bogle would pursue litigation beyond the TTAB proceeding.

32. On March 24, 2017, Brad Miller (co-founder of Next Wine), reached out directly to Jody Bogle, Bogle's director of public relations. Mr. Miller expressed his apprehension regarding the potential for litigation and was especially concerned that Bogle had asserted that "Next Wine was aware of Bogle's prior rights in 2014" – when in fact Mr. Miller was not made aware of Bogle's position until June of 2016. Most importantly, Mr. Miller hoped this last ditch effort to meet with Ms. Bogle would rekindle the prospects for an amicable resolution between Bogle and Next Wine and avoid litigation altogether.

33. Ms. Bogle agreed to meet with Mr. Miller by telephone on April 4, 2017. By agreement of the parties, Next Wine has not included any content from that April 4th meeting in this pleading.

### V. Bogle's Asserted Position that Coexistence Was Not Possible

34. Most recently, Bogle has made clear that it believes that Next Wine's MY ESSENTIAL wines cannot coexist in the marketplace with Bogle's wine labeled BOGLE VINEYARDS ESSENTIAL RED. Bogle has demanded that Next Wine abandon its MY ESSENTIAL Mark. Because Next Wine did not wish to rebrand, cancel or abandon its marks, and planned to further develop its MY ESSENTIAL wine varietal brand, the only way that Next Wine would leave the marketplace would be if Bogle forced it out with infringement litigation.

## CLAIMS FOR RELIEF

## COUNT I
### (Declaratory Judgment of Non-Infringement)

1. Plaintiff incorporated by reference and realleges each and every allegation above as though fully set forth herein.

2. An actual and justiciable controversy exists between the parties with respect to Next Wine's rights to use the MY ESSENTIAL Marks in connection with wine products.

3. Although Bogle initially represented to the USPTO, in writing, that there is no likelihood of confusion between its mark and Next Wine's MY ESSENTIAL marks, Bogle has now flip-flopped, and has repeatedly asserted that Next Wine is not entitled to use its MY ESSENTIAL Marks in commerce so long as Bogle wants to use BOGLE VINEYARDS ESSENTIAL RED in commerce.

4. Bogle now claims that there *is* a likelihood of confusion between Next Wine's products bearing the MY ESSENTIAL Marks and Bogle's products labeled BOGLE VINEYARDS ESSENTIAL RED.

5. Next Wine contends that there is no likelihood of confusion between Next Wine's goods bearing the MY ESSENTIAL Marks and Bogle's goods labeled BOGLE VINEYARDS ESSENTIAL RED. A side-by-side comparison of the marks at issue are instructive:

|  MY ESSENTIAL  |  BOGLE VINEYARDS ESSENTIAL RED  |

 

6. Clearly, there is no likelihood of confusion between Next Wine's use of its MY ESSENTIAL Marks, and Bogle's use of its applied-for ESSENTIAL RED mark because ESSENTIAL RED is accompanied by the BOGLE VINEYARDS house mark. The images make clear that Bogle's mark is BOGLE VINEYARDS ESSENTIAL RED.

7. Next Wine believes that because there is no likelihood of confusion among consumers, it is not infringing on Bogle's trademark rights.

8. Next Wine has the right to continue to use its MY ESSENTIAL Marks on its goods in commerce.

9. Based upon the unreasonable demands made by Bogle after many months of communications among the parties, there is a substantial controversy between Next Wine and Bogle because the parties have adverse legal interests of sufficient immediacy that warrant the declaratory relief sought herein.

10. Bogle's acts and conduct threatens to put Next Wine's business at a standstill. Without an immediate determination of non-infringement Next Wine will incur substantial damage if it is unable to continue to freely produce and market wine using the MY ESSENTIAL Marks and expand its business.

11. Next Wine seeks declaratory relief pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57, confirming that Next Wine's use of the MY ESSENTIAL Marks in connection with wine does not infringe any trademark rights of Bogle.

**PRAYER FOR RELIEF**

WHEREFORE, Next Wine LLC respectfully requests that this Court award:

A. A declaration that Next Wine's use of the MY ESSENTIAL Marks do not infringe any trademark rights, or other rights of Bogle;

B. An award of costs; and

C. Such other and further relief as the Court deems just and proper.

Dated: June 22, 2017

PORTER SCOTT
A PROFESSIONAL CORPORATION

By  */s/Martin N. Jensen*
    Martin N. Jensen

PORTER | SCOTT
350 University Avenue, Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{01695576.DOCX}   9
COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT FEDERAL LANHAM ACT (15 U.S.C. § 1051) PURSUANT TO DECLARATORY JUDGMENT ACT (28 U.S.C. § 2201)